Filed 12/19/22  Cronin v. Pacific Gas & Electric Co. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ADAM CRONIN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>        Defendant and Respondent. | A162715<br><br>(City and County of San Francisco Super Ct. No. CGC18567919) |

Appellant Adam Cronin appeals from a trial court order granting respondent Pacific Gas and Electric Company's motion for summary judgment as to four causes of action in appellant's employment discrimination suit.[1]  According to appellant, there remain triable issues of material fact related to respondent's termination of appellant's employment, an act alleged by appellant to have violated the California Family Rights Act (CFRA), the Fair Employment and Housing Act (FEHA), Labor Code[2] section 432.7, and public policy.  We find no such issues in the record and affirm the judgment accordingly.

---

[1] The order also granted summary judgment as to another cause of action not at issue in this appeal.

[2] All subsequent references to statute are to the Labor Code, unless otherwise noted.

# I. <u>BACKGROUND</u>

In February 2017, appellant was working for respondent as a programs manager when he filed an internal discrimination claim against supervisor Alan Jones and Jones's manager, Earle Davis. The complaint alleged that by promoting a less qualified person and denying an appeal of an unfavorable performance assessment, Jones and Davis had discriminated against appellant for exercising his rights under CFRA. Davis subsequently became aware of appellant's intent to file complaints with the Department of Fair Employment and Housing[3] on the same grounds.

The next month, respondent's corporate security department began an investigation arising from allegations in a criminal complaint filed against appellant in Solano County Superior Court. Those allegations suggested that appellant might have violated respondent's Code of Conduct by tampering with an electricity meter without authorization. When respondent's corporate investigator Kevin Griswold attended appellant's arraignment, he heard the superior court judge order appellant to stay away from a certain address. In the course of his investigation, Griswold learned that the address was home to appellant's ex-girlfriend, who accused appellant of entering her property without permission, severing two electricity meters, and throwing them in a ditch outside.

Appellant denied vandalizing the meters. When police found appellant's fingerprints on them, appellant claimed to have been "helping with" the meters at an earlier time in order to address a potential safety hazard. In an interview with Griswold, appellant repeated that claim, saying that he "removed the meters a couple of weeks before the vandalism" incident

---

[3] Effective June 30, 2022 the Department of Fair Employment and Housing was renamed the Civil Rights Department. (Stats. 2022, ch. 48, § 4.)

in order to look for burn marks consistent with a connection issue in the meter socket. Respondent's Code of Conduct advises employees not to "install, rearrange, remove, or tamper with company metering or service equipment without proper approval and authorization," but no work order was ever issued for appellant's removal of his ex-girlfriend's meters.

Griswold wrote a report summarizing the findings of his investigation and referring to a separate "crime report prepared by the Solano County Sheriff's Office" in relation to the vandalism incident. Griswold's report concludes that even if appellant's claims were true, his admitted actions "would still have been a violation of the . . . Code of Conduct." The same report featured prominently in a meeting held in early May by Vice President of Customer Operations Scott Sanford, who reviewed the report's contents and discussed them with Davis and corporate security personnel. Sanford decided to terminate appellant's employment based on his admitted removal of electrical meters in violation of the Code of Conduct.

After receiving notice of his termination, appellant filed the employment discrimination suit at issue here. Respondent moved for summary judgment, which was granted on April 21, 2021. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

" 'A trial court properly grants a motion for summary judgment where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc. § 437c, subd. (c).) "Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that

3

motion. [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347, quoting *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)

However, "[w]e need not concern ourselves with the trial court's reasons for granting summary judgment." (*Le Bourgeois v. Fireplace Mfg.* (1998) 68 Cal.App.4th 1049, 1057, fn. 10.) " '[W]here there is no genuine issue of material fact, the appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court. [Citations.] Thus, we must affirm so long as any of the grounds urged by [the moving party], either here or in the trial court, entitles it to summary judgment.' " (*Ibid.*, quoting *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481.)[4]

**B. First and Second Causes of Action (Violation of CFRA and FEHA)**

In his first cause of action, appellant alleged that his termination of employment was a "violation of FEHA/CFRA" insofar as it interfered with his rights to family care and medical leave under Government Code section 12945.2. In his second cause of action, appellant alleged that the termination violated FEHA by both discriminating and retaliating against him for availing himself of the same leave. For the purposes of both causes of action,

---

[4] We therefore pass over appellant's insistence that the trial court's order was "based on 'confus[ion]'" or "ignor[ance]." Even if it were, that would be irrelevant to the inquiry here.

4

appellant contended that the "reasons given" for the termination were "pretextual."

"In an employment discrimination case, an employer may move for summary judgment against a discrimination cause of action with evidence of a legitimate, nondiscriminatory reason for the adverse employment action. [Citation.] A legitimate, nondiscriminatory reason is one that is unrelated to prohibited bias and that, if true, would preclude a finding of discrimination. [Citation.] The employer's evidence must be sufficient to allow the trier of fact to conclude that it is more likely than not that one or more legitimate, nondiscriminatory reasons were the sole basis for the adverse employment action." (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158 (*Featherstone*).)

"By presenting such evidence, the employer shifts the burden to the plaintiff to present evidence that the employer's decision was motivated at least in part by prohibited discrimination. [Citation.] The plaintiff's evidence must be sufficient to support a reasonable inference that discrimination was a substantial motivating factor in the decision. [Citation.] The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive." (*Featherstone, supra,* 10 Cal.App.5th at pp. 1158–1159.)

Here, respondent moved for summary judgment with evidence showing that appellant "was terminated for admittedly violating the PG&E Employee Code of Conduct, specifically the provision stating: 'Don't install, rearrange, remove, or tamper with company metering or service equipment without proper approval and authorization.'" That evidence included the Code of Conduct, the corporate security report documenting appellant's admission

5

that he had "removed the meters" at his ex-girlfriend's house "a few weeks before the vandalism" incident, and respondent's letter informing appellant that his "employment [was] being terminated as a result of violations of the Company Code of Conduct." In particular, the letter cited the fact that appellant had "[t]ampered/removed company assets (metering service equipment) without proper approval and authorization."

An affidavit sworn by Griswold confirmed the security report's account of appellant's admission. Further evidentiary support appears in the record of appellant's deposition, in which appellant testified that he removed the meter in question in "October of 2015." In another affidavit, Sanford declared that he made the decision to terminate appellant's employment on the basis of the corporate security report's conclusion that appellant had violated the Code of Conduct by removing a meter. According to the affidavit, Sanford was "not aware of any PG&E employee similarly situated, *i.e.*, a PG&E employee who admitted in the course of a corporate security investigation that they had tampered with a meter without a PG&E work order or authorization, who was not terminated." Sanford spoke to Davis, who separately declared that appellant's "employment was terminated because he violated [the] provision of the Code of Conduct" cited repeatedly here.

This evidence was sufficient to allow the trial court to "conclude that it is more likely than not that [a] legitimate, nondiscriminatory" reason—removing a meter in violation of the Code of Conduct—was "the sole basis for" terminating appellant's employment. (*Featherstone, supra,* 10 Cal.App.5th at p. 1158.) As a result, respondent shifted to appellant the burden "to present evidence that the employer's decision was motivated at least in part by prohibited discrimination." (*Id*. at pp. 1158–1159.)

6

The only such evidence here relates to Sanford's conversation with Davis in anticipation of terminating appellant's employment. As appellant notes, he had filed against Davis a CFRA discrimination complaint that was still pending at the time Sanford made his decision. In turn, appellant contends that Davis's discussion with Sanford shows that Sanford's decision was motivated by the CFRA complaint and the issues raised therein. As we have already observed, however, the "stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive." (*Featherstone*, *supra*, 10 Cal.App.5th at p. 1159.)

Here, respondent produced overwhelming evidence in support of its position that appellant's employment was terminated for his admitted removal of a meter. In contrast, appellant's evidence does nothing to rebut respondent's contention. Appellant did not, for example, introduce evidence contradicting Sanford's suggestion that no similarly situated employee had ever been treated differently. At most, appellant's evidence raises the mere possibility that Davis had an improper motive, without supporting any reasonable inference imputing that motive to Sanford, who was the ultimate decision-maker. For that reason, appellant's evidence is not strong enough to create a reasonable inference of discriminatory motive.

As a curiosity, we also note appellant's self-serving statement that he removed the meter to check for a "serious safety issue," and thus, could not have violated a Code of Conduct that urges employees to "put[] safety first" and to " 'look[] for and interven[e] to stop unsafe acts.' " The evidentiary value of such statements is minute. In the first place, even if the Code of Conduct were so poorly written as to include such a broad "safety" loophole— effectively blessing any otherwise-forbidden act when it is accompanied by

7

some subjective and self-attested belief about safety—it would not support an inference that appellant's termination for violating the Code of Conduct was discriminatory. Secondly, when he removed his ex-girlfriend's meter, appellant was not "intervening to stop" any act, unsafe or otherwise; he was *committing* an act, and one expressly proscribed by the Code of Conduct at that. We are therefore unpersuaded by appellant's argument from the Code's alleged inconsistency.

In sum, the trial court did not err in granting summary judgment as to appellant's first and second causes of action.

## C. <u>Third Cause of Action (Wrongful Termination in Violation of Section 432.7)</u>

In his third cause of action, appellant alleged that his termination violated section 432.7, forbidding any employer to "utilize, as a factor in determining any condition of employment including . . . termination, . . . any record of arrest or detention that did not result in conviction." On appeal, appellant argues that there is a triable issue of material fact as to whether respondent utilized the police report concerning his ex-girlfriend's vandalized meter as a factor in Sanford's decision to terminate appellant's employment. As appellant observes, Sanford relied on Griswold's security report, which noted an "inconsistency . . . between [appellant's] statement provided to [Griswold] on May 2, 2017, and what he told Solano County Deputy J. Harris on December 12, 2015." And when deposed, Griswold testified that he learned of appellant's statement to the sheriff's deputy from the sheriff's crime report about the vandalized meter.

However, "[t]he purpose of . . . section [432.7] is to prevent the misuse of criminal offender records information; it does not prohibit an employer from disciplining an employee where the employer independently

investigates the conduct giving rise to the arrest or detention." (*Pinheiro v. Civil Service Com. for County of Fresno* (2016) 245 Cal.App.4th 1458, 1471, fn. 3.) Here, the security report relied upon by Sanford was the product of Griswold's independent investigation. Crucially, that investigation included questioning appellant *about the sheriff's crime report*. During Griswold's interview with appellant, appellant "admitted he had read the Crime Report . . . ." He "was asked if he committed the crime described in the . . . crime report . . . ."

It was in this context that Griswold asked appellant whether, "if additional investigation was conducted," there would "be any reason his cellular phone would indicate he was in the area of his ex-girlfriend's house" at the time of the crime. Such a question about "additional investigation" presupposes an initial investigation and would make little sense unless that initial investigation had recorded appellant's statement that he was *not* "in the area of his ex-girlfriend's house." Thus, Griswold's question was aimed clearly at probing the veracity of appellant's previous statement recorded in the crime report Griswold and appellant were then discussing. And when Griswold posed that question, appellant had every opportunity to disclaim the statements ascribed to him by the crime report. In this way, even appellant's previous statements to police were investigated independently by Griswold.

For that reason, there is no triable issue of material fact as to whether the sheriff's crime report was a factor in Sanford's decision, which was based on the corporate security report recounting Griswold's independent investigation. In sum, the trial court did not err in granting summary judgment on that basis.

9

**D.  Fifth Cause of Action (Wrongful Termination in Violation of Public Policy)**

As for appellant's fifth cause of action—a common law claim alleging wrongful termination in violation of public policy—respondent rightly observes that it "has no independent life."  "[W]hen a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition, but the common law claim is not subject to statutory procedural limitations affecting only the availability and scope of nonexclusive statutory remedies."  (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 904.)  Here, as we have already concluded, summary judgment was properly granted as to appellant's statutory claims, and for substantive reasons—not procedural ones.  As a result, appellant cannot prevail on his common law claim.

### III.  DISPOSITION

The judgment is affirmed.

_____
Wiseman, J. [*]

We concur:


_____
Simons, Acting P.J.



_____
Burns, J.

*Cronin v. Pacific Gas and Electric Co.* / A162715

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.